**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (CINCINNATI)**

| | | |
|---|---|---|
| TRAVIS WALKER<br>2375 Montana Avenue,<br>Cincinnati, OH 45211 | ) | CASE NO. |
| | ) | |
| | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES<br>AND INJUNCTIVE RELIEF** |
| | ) | |
| KRAFT HEINZ FOODS CO., LLC<br>7325 Snider Road,<br>Mason, OH 45040 | ) | **JURY DEMAND ENDORSED<br>HEREIN** |
| | ) | |
| | ) | |
| **Serve Also:** | ) | |
| Kraft Heinz Food Co., LLC<br>c/o CT Corporation Systems<br>Statutory Agent<br>4400 Easton Commons Way, Suite 125<br>Columbus, OH 43219 | ) | |
| | ) | |
| **-and-** | ) | |
| | ) | |
| Kraft Heinz Foods Co., LLC<br>Co-Headquarters<br>1 PPG Place, Suite 3200<br>Pittsburgh, PA 15222 | ) | |
| | ) | |
| **-and-** | ) | |
| | ) | |
| Kraft Heinz Foods Co., LLC<br>Co-Headquarters<br>200 East Randolph Street, Suite 7600<br>Chicago, IL 60601 | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff, Travis Walker, by and through undersigned counsel, as his Complaint against the

Defendant, states and avers the following:

## PARTIES

1. Walker is a resident of the city of Cincinnati, Hamilton County, Ohio.

2. Defendant Kraft Heinz Foods Co., LLC, ("Kraft") is a foreign incorporated for-profit company that conducts business within the state of Ohio and others.

3. The relevant location of the events and omissions of this Complaint took place was 7325 Snider Road, Mason, OH, 45040.

4. Kraft is, and was at all times hereinafter mentioned, Walker's employer within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C §2000e, R.C. §4101 et seq., and R.C. § 4112.01 et seq.

5. Within 300 days of the adverse employment actions described herein, Walker filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2021-01184 ("EEOC Charge").

6. On or about March 15, 2022, the EEOC issues and mailed a Notice of Right to Sue letter to Walker regarding the EEOC Charge.

7. Walker received the Notice of Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 200e-5(f)(1), which had been attached hereto as Plaintiff's Exhibit 1.

8. Walker has filed this Complaint on or before the 90-day deadline set forth in the Notice of Right to Sue letter.

9. Walker has properly exhausted all administrative remedies pursuant to 29 C.R.F. § 1614.407(b).

## JURISDICTION & VENUE

10. All of the material events alleged in this Complaint occurred in or around Warren County, Ohio.

11. Therefore, personal jurisdiction is proper over Defendant pursuant to R.C. § 2307.382(A)(1) and/or (3).

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 in that Plaintiff is alleging federal law claims under the Title VII.

13. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367, as Plaintiff's state law claims are so closely related to Plaintiff's federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

14. Venue is proper pursuant to 28 U.S.C. §1391.

## FACTS

15. Walker is a former employee of Kraft.

16. At all times noted herein, Walker was fully qualified for, and could fully perform the essential functions of his position(s) with Kraft.

17. Walker is African American and therefore in a protected class for his race.

18. Walker worked for Kraft, ending as a Machine Operator and Food Processor, from on or around November 25, 2019, until Kraft wrongfully terminated his employment on or around January 22, 2021.

19. In or around February 2020, a lead position had opened for the third shift, for which Walker applied.

20. Walker did not get the job, and instead, it went to Kevin LNU (Asian-American). Kevin LNU resigned from the position shortly after receiving it.

21. This failure to promote Walker was an adverse employment action against him.

22. Kraft's cited reason, or lack thereof, for passing over Walker for a promotion was pretext.

23. Kraft actually passed over Walker for a promotion discriminatorily against his race.

24. In or around August 2020, another shift lead position became available.

25. Walker applied again on or around August 11, 2020 and interviewed with Processing Manager Nate Hufferman (Caucasian) and Processing Supervisor Gene Myers (Caucasian).

26. After the initial interview, Walker was called to come in for a few more interviews.

27. However, Walker was once again passed over for the job, and third shift Jelly Lead Kenny LNU (Caucasian) was given the job.

28. Kenny LNU was hired only one week prior to Walker.

29. Kenny LNU required more training than Walker.

30. Not giving Walker the position and giving it instead to an employee who was much less experienced was an adverse employment action against Walker.

31. This failure to promote Walker was another adverse employment action against him.

32. Kraft's cited reason, or lack thereof, for passing over Walker for a promotion was pretext.

33. Kraft actually passed over Walker for a promotion discriminatorily against his race.

34. Walker felt the decision was based on racial discrimination and made a complaint to Myers, Hufferman, and head of Human Resources ("HR") Sam Collins (Caucasian). This was a protected complaint of racial discrimination.

35. In or around late August 2020, Walker was called to a meeting with the head of the company (name unknown, Caucasian), Myers, and Hufferman to discuss his protected complaint of racial discrimination.

36. At the meeting, Walker was told why the other candidate was purportedly chosen over him and Walker left the meeting just wanting to move forward from the situation.

37. Kraft disregarded Walker's complaint and failed to take any action with respect to racial discrimination.

38. After the meeting, Walker's employment got worse.

39. Walker was reprimanded for wearing a personal face mask instead of those provided by the employer, but Caucasian employees and supervisors were not.

40. Later, Kraft suspended Walker for allegedly missing one initial on some paperwork, but employees such as Billy LNU (Caucasian), Fabian Thompson (Caucasian), and Brian Hand (Caucasian) also missed initials and were disparately not suspended.

41. On or around January 10, 2021, Walker caught COVID-19 and started his two-week quarantine. He gave notice thereof immediately after.

42. On or around January 12 or 13, 2021, Walker received a call from Kraft Processor Levi LNU (African American) asking why he quit.

43. Surprised, Walker said he did not quit but was under quarantine, to which Levi LNU informed him that his job had been posted open for bid.

44. Walker immediately called Collins, who didn't pick up, and emailed him asking what happened.

45. Collins emailed back to tell Walker that his employment was not terminated, but he was under investigation for an incident of insubordination on January 11, 2021.

46. January 11, 2021 was the first day of Walker's quarantine.

47. Collins did not specify what the insubordination was.

48. Walker suspected it may have been an incident involving Genevie LNU (Filipina).

49. Kenny LNU (the person hired instead of Walker) needed some assistance, so Genevie LNU asked Walker to train him.

50. Walker knew how to help but was not a shift lead and was not a trainer, so he declined to help Kenny LNU.

51. A few minutes later, Walker went back to Kenny LNU and completed the task anyway.

52. After Walker's quarantine ended on or around January 22, 2021, he returned to work.

53. Walker was then sent to Hufferman's office.

54. At the meeting, Walker was given termination papers and informed the reason for his termination was "insubordination in refusing to help Genevie LNU the first time." This reason was pretext.

55. Walker was actually terminated discriminatorily against his race and/or in retaliation for his protected complaints of race discrimination.

56. As a result of being treated disparately on the basis of race during his employment at Kraft, Kraft's refusals to promote Walker because of his race and/or protected complaints, and being wrongfully terminated from Kraft, Walker has suffered severe emotional distress, anxiety, and depression.

57. The above facts demonstrate that the Defendant engaged in a pattern and practice of race discrimination.

58. The above facts demonstrate that the Defendant engaged in a pattern and practice of unlawful retaliation.

59. There was a causal connection between Walker's race and the Defendant's termination of Walker.

60. As a result of Kraft's acts and omissions described herein, Walker has suffered and will continue to suffer damages.

**COUNT I: FAILURE TO PROMOTE BASED ON RACIAL DISCRIMINATION IN VIOLATION OF R.C. §4112, et seq.**

61. Walker restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

62. Walker is African American, and thus is in a protected class for his race.

63. R.C. § 4112 et seq. provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

64. Defendant treated Walker differently than other similarly situated employees based upon his race.

65. In or around February 2020, Walker applied for a shift lead position.

66. Walker did not get the position, and it went to Kevin LNU (Asian-American).

67. In or around August 11, 2020, Walker applied again for a shift lead position.

68. Walker interviewed for this position multiple times.

69. The shift lead position went to Kenny LNU (Caucasian).

70. Kenny LNU was hired only one week prior to Walker and required much more training.

71. Kraft chose to promote a less experienced Caucasian man over a more experienced African American man.

72. Walker felt this was racial discrimination, and made a protected complaint to management and HR.

73. Defendant's failure to adequately address Walker's complaints of racism in the workplace was an adverse employment action against him.

74. Defendant's purported reason(s) for failing to promote Walker was pretextual.

75. Defendant actually chose not to promote Walker because of his race.

76. Defendant violated R.C. § 4112 et seq. by failing to promote Walker because of his race.

77. Defendant violated R.C. § 4112.02 et seq. by treating Walker differently from other similarly situated employees outside his protected class.

78. Defendant violated R.C. § 4112.02 et seq. by applying their employment policies in a disparate manner based on Walker's race.

79. As a direct and proximate result of Defendant's acts and omissions, Walker has suffered and will continue to suffer damages.

## COUNT II: FAILURE TO PROMOTE BASED ON RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII

80. Walker restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

81. Walker is African American, and thus is in a protected class for his race.

82. Title VII provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

83. Defendant treated Walker differently than other similarly situated employees based upon his race.

84. In or around February 2020, Walker applied for a lead position.

85. Walker did not get the position, and it went to Kevin LNU (Asian-American).

86. In or around August 11, 2020, Walker applied again for a lead position.

87. Walker interviewed for this position multiple times.

88. The shift lead position went to Kenny LNU (Caucasian).

89. Kenny LNU was hired only one week prior to Walker and required much more training.

90. Kraft chose to promote a less experienced Caucasian man over a more experienced African American man.

8

91. Walker felt this was racial discrimination, and made a protected complaint to management and HR.

92. Defendant's failure to adequately address Walker's complaints of racism in the workplace was an adverse employment action against him.

93. Defendant's failure to promote Walker because of his race was an adverse employment action against him.

94. Defendant's purported reason(s) for failing to promote Walker was pretextual.

95. Defendant actually chose not to promote Walker because of his race.

96. Defendant violated Title VII by failing to promote Walker because of his race.

97. Defendant violated Title VII by treating Walker differently from other similarly situated employees outside his protected class.

98. Defendant violated Title VII by applying their employment policies in a disparate manner based on Walker's race.

99. As a direct and proximate result of Defendant's acts and omissions, Walker has suffered and will continue to suffer damages.

**COUNT III: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112 et seq.**

100. Walker restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

101. Throughout his employment, Walker was fully competent to perform his essential job duties.

102. Kraft treated Walker differently than other similarly situated employees based on his race.

103. Walker was not given the same job opportunities as his Caucasian counterparts.

104. Walker was targeted for policy violations that similarly situated Caucasian employees were not punished for.

105. Kraft violated R.C. § 4112 et seq.by discriminating against Walker due to his race.

106. On or about January 22, 2021, Kraft terminated Walker without just cause.

107. At all times material herein, similarly-situated non-African-American employees were not terminated without just cause.

108. Defendant terminated Walker based on his race.

109. Defendant violated R.C. § 4112.01 et. seq. when they terminated Walker based on his race.

110. Walker suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 et seq.

As a direct and proximate result of Defendant's conduct, Walker has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT IV: RACE DISCRIMINATION IN VIOLATION OF TITLE VII

111. Walker restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

112. Throughout his employment, Walker was fully competent to perform his essential job duties.

113. Kraft treated Walker differently than other similarly situated employees based on his race.

114. Walker was not given the same job opportunities as his Caucasian counterparts.

115. Walker was targeted for policy violations that similarly situated Caucasian employees were not punished for.

116. Kraft violated Title VII by discriminating against Walker due to his race.

117. On or about January 22, 2021, Kraft terminated Walker without just cause.

118. At all times material herein, similarly-situated non-African-American employees were not terminated without just cause.

119. Defendant terminated Walker based on his race.

120. Defendant violated Title VII when it terminated Walker based on his race.

121. Walker suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to Title VII.

As a direct and proximate result of Defendant's conduct, Walker has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT V: RETALIATORY DISCRIMINATION

122. Walker restates each and every prior paragraph of this complaint, as if it were fully restated herein.

123. As a result of the Defendant's discriminatory conduct described above, Walker complained about the racial discrimination he was experiencing, including, but not limited to, passing him over discriminatorily for multiple promotions.

124. Subsequent to Walker reporting the racial discrimination to his supervisor and employer, Walker started receiving reprimands for actions his Caucasian counterparts did not get punished for.

125. Subsequent to Walker's reporting the racial discrimination to his supervisor and employer, Walker's employment was terminated.

126. Defendant's actions were retaliatory in nature based on Walker's opposition to the unlawful discriminatory conduct.

127. Pursuant to R.C. §4112.02(I) and Title VII, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

128. Walker suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to Title VII and R.C. § 4112.01 et seq.

11

129. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Walker, he suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**COUNT VI: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

130. Walker restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

131. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating an employee for taking sick leave when the employee had COVID-19.

132. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating and/or retaliating against an employee because he/she engages in protected activity under Ohio law.

133. A clear public policy exists and is manifested in the Families First Coronavirus Relief Act ("FCCRA") in which employers are required to provide paid sick leave and expand medical and family leave for employees who are adversely affected by COVID-19.

134. The day after Walker began his quarantine, his job was posted as open for bids, and his employment was subsequently terminated for pretextual reasons.

135. Defendant's termination of Walker jeopardizes this public policy.

136. Defendant's termination of Walker was motivated by conduct related to these public policies.

137. Defendant had no overriding business justification for terminating Walker.

138. As a direct and proximate result of Defendant's conduct, Walker has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## DEMAND FOR RELIEF

WHEREFORE, Walker demands from Defendant the following:

a) Issue a permanent injunction:

     i. Requiring Defendant to abolish discrimination, harassment, and retaliation;

     ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

     iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

     iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

     v. Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendant to expunge Walker's personnel file of all negative documentation;

c) An award against each Defendant for compensatory and monetary damages to compensate Walker for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

13

e)  An award of reasonable attorneys' fees and non-taxable costs for Walker's claims as allowable under law;

f)  An award of the taxable costs of this action; and

g)  An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

    /s/ Evan R. McFarland
Evan R. McFarland (0096953)
Matthew G. Bruce (0083769)
       Trial Attorney
Evan R. McFarland (0096953)
Brianna R. Carden (0097961)
**THE SPITZ LAW FIRM, LLC**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-0244 x173
Fax:    (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com
Email: Brianna.Carden@SpitzLawFirm.com

Attorneys for Plaintiff Travis Walker

## **JURY DEMAND**

Plaintiff Travis Walker demands a trial by jury by the maximum number of jurors permitted.


    /s/ Evan R. McFarland
Evan R. McFarland (0096953)